# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Savannah Division

**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By tblancha at 2:25 pm, Dec 18, 2009

In the matter of:                )
                                 )       Chapter 13 Case
FELICIA LAFAYE McCLOW             )
                                 )       Number <u>09-40164</u>
            *Debtor*             )

## MEMORANDUM AND ORDER
## ON DEBTOR'S OBJECTION TO THE CLAIM OF
## TIPTON'S AMERICAN FURNITURE, INC.

Debtor Felicia Lafaye McClow filed Chapter 13 on January 23, 2009. On February 2, 2009, Tipton's American Furniture, Inc., ("Tipton's") filed a secured claim in the amount of $4,995.66, listing it as a Purchase Money Security Interest ("PMSI"). On July 20, 2009, Debtor filed an objection to Tipton's secured claim, asserting that the secured portion of Tipton's claim should be limited to $1,923.86. Tipton's responded on July 31, 2009, and a hearing was held on October 6, 2009. Debtor filed a Brief in Support of Objection to Claim on October 21, 2009, and Tipton's filed a Response on October 27, 2009. After consideration of the record before me and of all applicable law, I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor visited Tipton's on December 7, 2007. She purchased a bedroom suite on a "Retail Installment Contract & Security Agreement." The "cash price" listed on

the contract was $3,479.64.[1] Debtor did not pay any down payment. Debtor also purchased property insurance on the furniture for $189.41 and credit life insurance for $42.66. Debtor financed a total of $3,711.71. Debtor financed the bedroom furniture for 24 months at an annual percentage rate of 22.96%. The total finance charge was $976.45, bringing the total amount of payments to $4,688.16. Debtor agreed to pay a $10.00 late charge if a payment was more than ten days late. The twenty-four monthly payments of $195.34 were scheduled to start on January 15, 2008. Proof of Claim #1, p. 2 (February 2, 2009).

On September 24, 2008, Debtor again purchased items from Tipton's. Debtor had a remaining balance from the December 7 purchase of $2,254.76. Debtor purchased a television and a stand on another Retail Installment Contract & Security Agreement. The cash price was $1,923.86,[2] and Debtor did not make any down payment. Debtor again purchased property insurance for $158.64 and credit life insurance for $35.60. Debtor financed a total of $4,372.86. Debtor financed the furniture for eighteen months at an annual percentage rate of 23.03%. The total finance charge was $862.80, bringing the total amount of payments to $5,235.66. Debtor again agreed to pay a $10.00 late charge if a payment was more than ten days late. The eighteen monthly payments of $290.87 were scheduled to start on November 1, 2008. On each of the contracts, the following language is found:

---

[1] Delivery charge: $55.00, 1 Bed rails: $90.20, 1 Footboard: $230.78, 1 Mirror: $270.85, 1 Headboard: 371.37, 2 Nite [sic] stands: $399.00 x 2 = $798, 1 Chest drws: $682.99, 1 Dresser: $752.81. This totals $325. Sales tax of 7% (while not shown on the contract) brings the total to $3,479.64.

[2] 1 Project TV: $1599.00, 1 Cart/stand: 199.00.

> Each payment on this agreement shall be allocated to the purchases made on this agreement and to all previous installment purchases not paid for in full as of this date on the basis that the items first purchased shall be deemed first paid for, and, in the case of items purchased on the same date, the lowest priced items shall be deemed first paid for.

Proof of Claim #1, p.3 (February 2, 2009).

Debtor filed Chapter 13 on January 23, 2009, listing a $3,500.00 debt to Tipton's as unsecured.  On February 2, 2009 Tipton's filed a proof of claim in the amount of $4,995.66, listing PMSI status.  Debtor objected to the claim, alleging that Tipton's—by refinancing the remaining December 7, 2007, contract balance with the new September 24, 2008, contract— lost its secured status on the remaining balance due on the earlier contract. Tipton's disputed this, claiming that PMSI status had not been released.  There was an October 6, 2009, hearing after which both parties submitted their briefs on the matter.

## CONCLUSIONS OF LAW

The term "PMSI" is not defined in the Bankruptcy Code, so courts turn to state law to determine what security interest constitutes a PMSI.   In re Murray, 352 B.R. 340, 346 (Bankr. M.D. Ga. 2006);   In re Lee, 169 B.R. 790, 792 (Bankr. S.D. Ga.1994) (Dalis, J.); See also In re Freeman, 956 F.2d 252, 254 (11th Cir. 1992); In re Johnson, 1998 WL 34066154, *1 (Bankr. S.D. Ga.1998) (Dalis, J.).

Pursuant to Georgia law, a security interest in goods is a PMSI to the extent that the money borrowed for the purpose of buying consumer goods is actually used to purchase the consumer goods which secure the transaction. O.C.G.A. 11-9-103 states in the relevant part:

(a) . . . As used in this Code section, the term:

(1)     'Purchase money collateral' means goods or software that secures a purchase money obligation incurred with respect to that collateral.

(2)     'Purchase money obligation' means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.

(b) . . . A security interest in goods is a purchase money security interest:

(1)     To the extent that the goods are purchase money collateral with respect to that security interest.

The comments to the Uniform Commercial Code point out that PMSI status "requires a close nexus between the acquisition of collateral and the secured obligation." U.C.C. § 9-103 cmt. n. 3 (2002). A PMSI is lost when that nexus is lost. That nexus can be lost through refinancing the old debt while taking on new debt for new value. *See, e.g.*, Matter of Franklin, 75 B.R. 268, 270-71 (Bankr. M.D. Ga. 1986) (noting that "[t]he vast majority of courts that have considered the issue" have held this way, and listing many cases that support this argument).

However, PMSI status is not lost when the refinancing agreement provides a method "for determining the extent to which each item of collateral secures its purchase money." Southtrust Bank of Alabama, Nat. Ass'n v. Borg-Warner Acceptance Corp., 760 F.2d 1240, 1243 (11th Cir. 1985).

Tipton's alleges that the language in the contract, which tracks the language in In re Staley, 426 F.Supp. 437, 437 (M.D. Ga. 1977), is sufficient to preserve PMSI status. In Staley, a debtor purchased a stereo and credit life insurance and signed an agreement stating that "installment payments will be applied as follows: In the case of items purchased on different dates, the item first purchased shall be deemed paid for first; in the case of items purchased on the same date, the lowest priced item shall be deemed paid for first." Id. at 437 (internal quotations omitted). On three other occasions Debtor made purchases under this agreement. The Staley court held that the secured party did not lose PMSI status because the collateral only secured its own purchase price and terminated upon full payment of that purchase price.[3]

Debtor cites, and Tipton's ignores, In re Freeman, 956 F.2d 252 (11th

---

[3]Tipton's also relies on In re Murray, 352 B.R. 340, for the prospect that the PMSI can survive despite rolling other costs in with the financed amount. In Murray, a Debtor had purchased an automobile, an extended service contract, a documentary fee, and a title fee. Id. at 345. All of these fees were purported to be secured by the automobile in a PMSI. The court in Murray held that these charges were so intertwined with the acquisition of the vehicle that they were to be considered part of the price. Id. at 349. Murray is inapposite to this case, because it simply defined "price" broadly to include costs so inextricably intertwined with the sale price that they really should have been considered part of the acquisition. It did not address the question that is before this Court concerning renewal transactions.

℅AO 72A
(Rev. 8/82)

Cir. 1992). In <u>Freeman</u>, the debtor began purchasing tools on a revolving account. The tools were included as security for the debt and granted the seller a PMSI in the tools. The tool dealer sold tools to the debtor one more time before transferring the debt to Snap-On. Twice more the debtor purchased tools from Snap-On under a security agreement / financing agreement. When the debtor filed Chapter 13, he claimed that Snap-On had lost its PMSI by consolidating the extended security agreements. On appeal, the Eleventh Circuit held that even though the security agreement had a designated a "First In First Out" method of payment allocation, the consolidation destroyed the PMSI because the "method provide[d] no allocation among sales tax, interest, and purchase price[,] . . . the method for allocating payments . . . [was] inadequate to determine which tools ha[d] been paid for and which secure[d] their own purchase price." <u>Id.</u> at 255.

These additional charges were effectively dealt with in <u>In re Cersey</u>, 321 B.R. 352 (Bankr. M.D. Ga. 2004). In <u>Cersey</u> the debtors sought to have the furniture which secured the PMSI declared free from security because of a cross-collateralization clause in the agreement. The <u>Cersey</u> court noted that although PMSIs are transformed into non-secured debts by exercising cross-security clauses, they are not transformed when there is a contractually provided allocation method. <u>Id.</u> at 353 (citing <u>In re Hughes</u>, 230 B.R. 213 (Bankr. M.D. Ga. 1998) and <u>Southtrust Bank of Alabama, Nat. Ass'n v. Borg-Warner Acceptance Corp.</u>, 760 F.2d 1240, 1243(11th Cir. 1985)). In <u>Cersey</u>, the secured party used the following language in its security agreement / financing agreement:

Seller retains its security interest only in the purchase price (including installation costs and sales tax) in merchandise purchased on such previous contract(s) which has not been fully paid for in full as of this date. For the purpose of determining which items have been paid for, each payment shall be allocated in accordance with any mandatory provisions of applicable law, and in the absence of such provisions, each payment shall be allocated in the following order: all sales taxes, all finance charges, all insurance charges, all delinquency charges, all court costs, all dishonored payment fees, all delivery charges, all set-up or installation fees, and then to the purchase price of each item in order of earlier items paid for first, and in the case of multiple items purchased on the same day, in order of lesser valued items paid for first. However the amount of any down payment on this contract shall be allocated in its entirety to this contract and to the purchase price of the item(s) purchased in order of lesser-valued items paid for first. As a particular item is deemed fully paid in this manner, Seller's security interest in that item shall terminate.

The court held that the contractually provided allocation method was sufficient to allocate payments across different charges and more importantly, that the method met the Freeman test, which requires "allocation among sales tax, interest, and purchase price." Id. at 354 (quoting Freeman, 956 F.2d at 255).

In the case *sub judice*, the installment contract allocated payments to older purchases first, and for purchases made on the same day, to the lowest priced item first. This allocation is identical to the allocation language upheld in Staley (1977), but applies the same "First In First Out" allocation method rejected in both Freeman (1992) and in Cersey (2004) (for the 2001 Ledford contracts). However, the holding in Freeman is clear; for a PMSI to survive a refinancing agreement, the agreement must specify the order in which add-on

AO 72A
(Rev. 8/82)

costs—costs which are not part of the item purchased—abate upon payment.  Because this is a refinancing agreement. Murray is distinguishable and is limited to its facts.  See Murray, 352 B.R. at 345.

I find Cersey to be persuasive.  The refinancing agreement at issue in Cersey applied the rule set out in Freeman and listed every possible charge that might be charged pursuant to the agreement.  Because that agreement established the order of the allocation of payments to all charges, it complied with the rule set forth in Freeman.

In this case, payments toward interest, the late fee, the delivery fee, the credit life insurance, and the property insurance are not allocated in the contract as required by the holding in Freeman.  These omissions, and the lack of specificity of the allocation language in general make the allocation provision in the Retail Installment Contract & Security Agreement insufficient to maintain the PMSI status on the furniture.

Debtor has asked this Court to find that Tipton's has a PMSI in the television and television stand only, in the amount of $1,923.86, and that the remaining portion of its claim is designated as unsecured.  Debtor is entitled to that relief.

### O R D E R

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Debtor's Objection to the Claim  of Tipton's

American Furniture, Inc., is GRANTED.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This _17th_ day of December, 2009.

%AO 72A
(Rev. 8/82)